IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Elaine Deloris Williams, ) | |
| ) | Civil Action No. 6:11-2344-GRA-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

On November 30, 2007, the plaintiff filed an application for disability insurance benefits ("DIB"). She also filed an application for supplemental security income ("SSI") benefits on February 25, 2008, alleging in both applications that she became unable to work on September 10, 2005. The applications were denied initially and on reconsideration by the Social Security Administration. On June 27, 2008, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Kristan V. Sagliocco,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

an impartial vocational expert, appeared on April 20, 2010, considered the case *de novo*, and on May 21, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. At the hearing, the plaintiff amended her alleged disability onset date to December 31, 2006 (Tr. 37). The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on June 30, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since December 3, 2006,[2] the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: morbid obesity, hypertension, and osteoarthritis of the knees bilaterally (20 C.F.R. §§ 404.1520(c), 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526, 416.920(d), 416.925, 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as

---

[2] The ALJ stated in his decision that the plaintiff amended her alleged disability onset date to December 3, 2006, at the hearing (Tr. 18, 20). However, the plaintiff maintains, and the record of the hearing shows, that the disability onset date was amended to December 31, 2006 (Tr. 37; *see* pl. brief 2). The discrepancy in dates appears to be a clerical error and does not appear to have any bearing on the issues before this court.

2

defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the claimant is further limited in that she must be allowed to sit or stand at will. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, stoop, kneel, and crawl. The claimant must also avoid hazards.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

7. The claimant was born on March 3, 1957, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563, 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 1564, 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 3, 2006, through the date of this decision (20 C.F.R. § 404.1520(g), 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**EVIDENCE PRESENTED**

Medical treatment records reveal the plaintiff has a history of hypertension, sleep apnea, gastroesophageal reflux disease ("GERD"), and arthritis in both knees. The plaintiff is also morbidly obese and has complained to her doctors about back pain and heart palpitations.

The plaintiff's hypertension is well documented, and the plaintiff often reported headaches tied to her elevated blood pressure (*see* Tr. 212). Doctors generally attempted to treat the hypertension with the medications lisinopril, atenolol, and norvasc (*e.g.*, Tr. 212, 220, 327). However, the plaintiff often failed to take her medication (*e.g.*, Tr. 210, 255, 263, 337, 400).

The plaintiff's sleep apnea was diagnosed with a sleep study in 2001 or 2002 (Tr. 226, 279). Although it appears she was having increasing difficulty beginning in 2005 (*see, e.g.*, Tr. 215, 217, 268, 270), she nonetheless reported in April 2007 that she would generally wake up "feeling energetic" in the morning (Tr. 215), and her doctor reported that the plaintiff "[did] not appear overtly sleepy" (Tr. 216).

On April 24, 2007, the plaintiff was seen at the Medical University of South Carolina ("MUSC") sleep clinic by Dr. Qanta Ahemed. The plaintiff reported difficulty sleeping for the past two years, but she had been unable to complete a sleep evaluation previously due to financial restraints. The plaintiff was scheduled for a split-night sleep study (Tr. 269-70).

At an appointment at MUSC on June 12, 2007, it was noted that the plaintiff's blood pressure was elevated at 156/102, and medication was increased as a result (Tr. 210-12). It was also noted that the plaintiff did not keep her appointment with a registered dietician for medical nutrition therapy on June 6, 2007, but the plaintiff planned to reschedule (Tr. 210; *see* Tr. 214).

The plaintiff underwent a sleep study on June 18, 2007. It was noted that the plaintiff had numerous obstructive sleep apneas and hypopneas, which caused cortical arousals. The sleep study determined that a CPAP machine and heated humidifier eliminated the plaintiff's sleep apnea problems (Tr. 260–61). In June 2007, the plaintiff's lab work from MUSC indicated abnormal results for Hepatitis B and C (Tr. 209).

Doctors at MUSC noted the plaintiff's gastroesophageal reflux disease was controlled with medication, which was covered by her insurance plan (Tr. 337).

The plaintiff also has complained of knee and back pain. She reports that her knee pain is worse when she walks (Tr. 380), and her back pain "worsens after standing for prolonged periods of time" but "feels better when she sits down" (Tr. 223; *accord* Tr. 219). Examinations showed that the plaintiff had arthritis in her knees (Tr. 382), but her back pain was "clearly related to her weight" (Tr. 226; *accord* Tr. 224). The pain was treated only with Tylenol and ibuprofen (Tr. 383).

The plaintiff has reported heart palpitations occasionally, but they began occurring frequently in November 2008. A basic work-up did not initially "reveal any cause for possible palpitations" (Tr. 336), but the plaintiff later reported that their appearance was connected with taking a certain medication, Ultram (Tr. 341, 343). The palpitations "stopped as soon as she stopped this medication" (Tr. 343.) EKG and other imaging showed her heart was functioning normally, and there was no indication of heart disease (Tr. 357–58, 401–02).

Doctors repeatedly recommended that the plaintiff lose weight and exercise more to help with her high blood pressure, pain, and other symptoms (Tr. 221, 224–25, 255). The plaintiff continued gaining weight (*e.g.*, Tr. 210, 215, 219). Doctors also suggested that the plaintiff meet with a nutritionist (*e.g.*, Tr. 212, 255), but she indicated she could not afford it (Tr. 304).

On June 11, 2008, Kerri Kolehma, M.D., examined the plaintiff at the Commissioner's request to assist in resolving her disability application. Dr. Kolehma noted that the plaintiff had diagnoses of arthritis, back pain, obesity, sleep apnea, GERD, and hepatitis B and C (Tr. 304). At this examination, the plaintiff stated that her knee pain kept her from walking, though Dr. Kolehma observed that the plaintiff had no problems walking (Tr. 304, 306). The plaintiff rated her back pain at the highest possible level, but said it is relieved by lying down or taking Tylenol (Tr. 304). On examination, Dr. Kohehma found some "very mild" deformity in the plaintiff's knees, but those joints retained their "full range of motion" (Tr. 305). Though the plaintiff's obesity and body habitus limited her range of motion slightly, she was still entirely within normal functional limits in all joints (Tr. 305, 307). There was no evidence of nerve involvement in the plaintiff's back pain, and Dr. Kolehma opined that the pain was "likely secondary to degenerative changes and extreme excessive weight" and would "be aggravated with standing and walking" (Tr. 305). Likewise, Dr. Kolehma thought the plaintiff's knee pain was related to both degenerative changes and her weight and would "be aggravated with excessive standing and walking" (*Id.*). Dr. Kolehma recommended that the plaintiff join Weight Watchers, which the doctor believed was both "affordable and highly successful" (*Id.*).

The record contains three opinions as to the plaintiff's physical capacity. Mary Lang, M.D., reviewed the plaintiff's medical records in September 2007 and concluded that the plaintiff could lift up to 20 pounds occasionally and ten pounds frequently; stand and/or walk about six hours in a workday; sit about six hours in a workday; frequently balance; occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds (Tr. 239–40.) Dr. Lang also believed the plaintiff would need to avoid all exposure to hazards such as machinery and heights (Tr. 242.) Notably, Dr. Lang stated that her assessment of the plaintiff's capacity had been reduced from what

would normally be expected from her condition to account for the plaintiff's obesity (Tr. 240).

In June 2008, Jean Smolka, M.D., an orthopedist, reviewed the plaintiff's records, including Dr. Kolehma's recent exam, and came to conclusions almost identical to those of Dr. Lang (Tr. 308-15). The only difference was that Dr. Smolka believed that the plaintiff was less limited in her crouching ability than Dr. Lang had stated: Dr. Smolka believed the plaintiff could frequently crouch (Tr. 310), but Dr. Lang believed the plaintiff could do so only occasionally (Tr. 240).

Cary Fechter, M.D.[3] of Palmetto Pulmonary Physicians completed a function report dated July 30, 2009 (Tr. 317-19). He opined that the plaintiff was able to sit for only two hours, stand for one hour, and walk for 20 minutes at a time (Tr. 317). He also stated that the plaintiff could never lift any significant weight and mentioned as an example that the plaintiff had been unable to lift a vacuum as a housekeeper (*Id.*). He also believed that the plaintiff's back pain would keep her from any repetitive pushing and pulling and that she faced many significant postural limitations: she could never climb, squat, kneel, crawl, or twist; and could only occasionally bend or lift her hands above shoulder level (Tr. 317–18). Dr. Fechter also recommended that the plaintiff avoid unprotected heights, moving machinery, extreme temperatures, dust, fumes, and gases (Tr. 318).

At the hearing, the plaintiff initially testified that she had been a hotel housekeeper from 1973 to 2006 (Tr. 39), when she alleged her physical condition made her unable to work anymore. However, when questioned more about her work history, the plaintiff became unsure. Records indicated she had earned over $10,000 in 2007, but she said could not remember what work she had done that year (Tr. 40, 44). She then stated that she could not remember working in 2006 either and may have mixed up the dates on

---

[3] Dr. Fechter was one of the plaintiff's treating physicians from April to July 2009, but it appears that this treatment was primarily related to her sleep apnea (*See* Tr. 321-33).

9

her initial application form (*See* Tr. 42, 44). The plaintiff stated she was 5'4" tall[4] and weighed 320 pounds (Tr. 46). When asked to describe her physical abilities, the plaintiff stated that she could not bend (Tr. 45) and could not stand any more than 30 minutes at a time or walk further than a city block (Tr. 50). She also stated that she could not lift any more than ten pounds and avoided lifting anything due to pain (Tr. 50–51). The plaintiff also claimed she had an enlarged heart (Tr. 47) and that her sleep apnea kept her from any restful sleep (Tr. 48–49). She also testified that during examination at MUSC the doctors indicated she had had a light stroke (Tr. 50).

The ALJ asked the vocational expert several hypothetical questions, one of which asked her to assume a person of the plaintiff's age, education, and past work experience, who could perform light work; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, stoop, kneel, and crawl; must avoid all workplace hazards; and would need to be able to sit and stand at will (Tr. 53–54). Ms. Sagliocco said that a person with those limitations could not perform the plaintiff's past work, but could perform jobs such as sorter (45,000 jobs nationally; 1,500 in South Carolina) and visual inspector (27,000 jobs nationally; 1,400 in South Carolina) (Tr. 54–55).

## **ANALYSIS**

The plaintiff alleges disability commencing in December 2006, at which time she was 49 years old.[5] She was 53 years old at the time the ALJ's hearing decision was issued on May 21, 2010. The plaintiff has a high school education and past relevant work as a housekeeper. The ALJ determined that the plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work and that she must be allowed to sit or stand at will; never climb ladders, ropes, or scaffolds; and she can

---

[4] Drs. Kolehma and Fechter stated in their notes that the plaintiff was 5'7" tall (Tr. 305, 321).

[5] The ALJ erroneously found that the plaintiff was 48 years old on her alleged disability onset date (Tr. 27). Again, this does not appear to have any bearing on the issues before this court.

occasionally climb ramps or stairs, stoop, kneel, and crawl. The ALJ further found that the plaintiff must avoid hazards. The plaintiff argues the ALJ erred in (1) failing to evaluate the combined effect of her impairments; (2) failing to perform a proper credibility analysis; and (3) failing to explain the weight given to opinion evidence.

***Combined Effect of Impairments***

The plaintiff first argues that the ALJ failed to properly consider the combined effect of her multiple impairments. When, as here, a claimant has more than one impairment, the ALJ must consider the severe and nonsevere impairments in combination in determining the plaintiff's disability. Furthermore, "[a]s a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). It "is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity.... [T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." *Id.* (citing *Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir.1985)). The ALJ's duty to consider the combined effect of the plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability determination process." 20 C.F.R. § 404.1523.

The ALJ specifically recognized her duty to consider all of the plaintiff's impairments at steps three, four, and five, and said she had so considered them (Tr. 19–20, 22). Notably, as pointed out by the Commissioner, the plaintiff neither attempts to explain what additional, unmeasured and unobserved effects her conditions had on her functioning, nor does she point to any piece of evidence that indicates that the objective medical findings in the record do not adequately account for the effects of all her impairments. The ALJ stated that she gave "considerable weight to the opinions of the State medical consultants" (Drs. Lang and Smolka). Both of these doctors explicitly considered in their

opinions all of the plaintiff's symptoms, including ones the ALJ would later find were nonsevere (*see* Tr. 239-40, 309-10). Dr. Lang even stated that he had adjusted his assessment to compensate for the plaintiff's obesity (Tr. 240). Furthermore, the medical evidence that the ALJ relied upon (such as Dr. Kolehma's examination) included objective medical findings, such as the plaintiff's range of motion and results on straight-leg raising tests (*e.g.*, Tr. 306–07), that, by their very nature, included the effects of the plaintiff's obesity. Moreover, the ALJ explicitly noted that the plaintiff's obesity did not have a negative effect upon her ability to perform routine movement beyond the assessed RFC (Tr. 24). Based upon the foregoing, this allegation of error is without merit. *See Thornsberry v. Astrue*, No. 4:08-4075-HMH-TER, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) ("[T]he court finds that while the ALJ could have been more explicit in stating that his decision dealt with the combination of [the claimant's] impairments, his overall findings adequately evaluate the combined effect of [the claimant's] impairments."); *Ingram v. Astrue*, No. 3:07-cv-823-GRA, 2008 WL 3823859, at *2 (D.S.C. Aug. 12, 2008) [T]he ALJ's separate discussion of each of Plaintiff's impairments indicates that he considered them in combination.").

***Credibility***

The plaintiff also argues that the ALJ failed to properly assess her credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .
> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity

12

>and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

>(1)   the individual's daily activities;
>
>(2)   the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
>(3)   factors that precipitate and aggravate the symptoms;
>
>(4)   the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
>(5)   treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
>(6)   any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The plaintiff argues that the ALJ made a legal error by not fully accepting her allegations of debilitating pain because once she showed that she "suffer[ed] from an impairment that could reasonably cause the symptoms alleged, then [she was] thereafter entitled to rely exclusively on subjective evidence to prove the intensity, persistence, and severity of []her related symptoms" (pl. brief 13 (emphasis omitted)). It is true that a claimant is allowed to prove her level of pain using solely subjective evidence and does not need to present any objective evidence once she has established a condition that could reasonably cause such pain. However, as argued by the Commissioner, this does not mean that other evidence is irrelevant or that the ALJ must take a person's claims at face value without any sort of credibility analysis.

In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p).

> The court further acknowledged:
>
> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

Here, the ALJ determined that although the plaintiff had impairments that could reasonably cause some of the alleged symptoms, the record did not support the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" (Tr. 24). Specifically, the ALJ first noted that the limited, conservative treatment the plaintiff had received was not indicative of a disabling condition (Tr. 25-26): the plaintiff's pain was treated only with over-the-counter painkillers (Tr. 304, 383); and no doctor had obtained any x-ray or MRI imaging of the plaintiff's knees or back, which indicated that the

doctors did not think her condition was particularly serious. *See generally Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (ALJ did not err by considering the inconsistency between claimant's level of treatment and her claims of disabling pain). The ALJ also noted that objective medical findings from Dr. Kolehma's examination of the plaintiff showed that her range of motion remained well within normal functioning, even in her back and knees (Tr. 25; *see* Tr. 305-07). The ALJ also found it important that the plaintiff consistently did not follow prescribed treatment, even once it was proven effective: she often failed to take her medication (*see* Tr. 210, 219, 255, 263, 337); did not use her CPAP machine every night (Tr. 304); and, despite being repeatedly counseled that losing weight would help alleviate many of her symptoms, the plaintiff gained weight (*see* Tr. 210, 215, 221). The plaintiff also did not exercise or go to a nutritionist or weight-loss program, despite being advised to do so, and admitted to "eat[ing] fast food a lot" (Tr. 219, 255, 272, 383). *See generally* 20 C.F.R. §§ 404.1530, 416.930 (failure to follow prescribed treatment without good reason is grounds to find a claimant not disabled); *English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir. 1993) (failure to take prescribed medication, among other evidence, supports ALJ's finding of non-disability).

The plaintiff argues that the ALJ erred in failing to account "for the possibility that [she] might well have sought all of the medical care suggested to her if she had been able to afford it" (pl. brief 15). However, the ALJ specifically considered the plaintiff's financial condition, noting that the plaintiff stated she could not afford to see a nutritionist and that she had been instructed to join Weight Watchers as a low-cost alternative. However, there is no evidence she did so (Tr. 25). Moreover, the plaintiff did make an appointment with a dietician, but she failed to show for the appointment (Tr. 210; *see* Tr. 214).

The ALJ further noted that the plaintiff was vague and inconsistent about her work history in a way that suggested to the ALJ that she was deliberately trying to avoid

16

discussing activities that showed she was not disabled (Tr. 26):  The plaintiff had earned over $10,000 in 2007 and had told her doctor in that same year that she was "always walking around at her job" (Tr. 272), but at the hearing only three years later she claimed she could not remember even working that year. *See generally Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding ALJ's decision to discount the plaintiff's testimony where she gave "evasive and unclear answers" at hearing).

Based upon the foregoing, the ALJ's credibility finding is based upon substantial evidence.  "It is not within the province of a reviewing court to determine the weight of the evidence, nor is the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Moreover, even if the ALJ did err in considering the plaintiff's failure to see a nutritionist and undergo recommended testing and imaging in assessing her credibility due to her financial concerns, this court finds that any error in this regard is harmless as the ALJ's finding is supported by other substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding).

***Opinion Evidence***

The plaintiff argues that the ALJ failed to properly explain the weight she gave to the opinion evidence of Dr. Fechter and to that of non-examining state medical consultants (pl. brief 15).  The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list:  (1)  the length of the treatment relationship and the frequency of the examinations; (2)  the nature and extent of the treatment relationship; (3)   the evidence with which the physician supports his opinion; (4)  the consistency of the opinion; and (5)  whether the physician is a specialist

17

in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

The ALJ gave "little weight" to the opinion of Dr. Fechter, noting that the opinion was "inconsistent with the weight of the medical evidence of record" (Tr. 26-27). Dr. Fechter opined that the plaintiff was severely disabled, unable to lift any significant weight and unable assume a host of postures. (Tr. 317–19). However, as the ALJ discussed in her decision, the plaintiff's treatment history shows conditions that were treated conservatively and which doctors thought were (or would be) adequately handled by over-the-counter medication, exercise, and weight loss. Dr. Fechter mentions no evidence to the contrary and makes clear that he has not even looked at an x-ray to assess

the plaintiff's condition (Tr. 317).  Thus, it was reasonable for the ALJ to find that Dr. Fechter's opinion was inconsistent with the great weight of other medical evidence before her.

The ALJ's assessment of the plaintiff's RFC is supported by substantial evidence.  The evidence in this case shows that although the plaintiff experienced some limitations due to her high blood pressure and arthritis – limitations that were aggravated by obesity and other impairments – she was far from completely disabled.  Rather, the continuous record of the plaintiff's treatment shows that nearly all of the plaintiff's impairments were adequately controlled with medication (when she actually took her medication).  Furthermore, her allegedly incapacitating pain was eliminated by simple, over-the-counter pain relievers like acetaminophen and ibuprofen (Tr. 304, 383). Moreover, the ALJ's assessment of the plaintiff's RFC was consistent with the opinions of Drs. Lang and Smolka, both of whom opined the plaintiff was capable of a limited range of light work (Tr. 239-42, 309-12).  State agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i); *see Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.").  These medical opinions were consistent with Dr. Kolehma's physical examination, which showed the plaintiff still retained the mobility and range of motion necessary for light work (Tr. 305-07). Furthermore, the ALJ gave the plaintiff the benefit of the doubt in including a sit/stand option in the RFC. Based upon the foregoing, this allegation of error is without merit, and the ALJ's RFC assessment is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

Kevin F. McDonald
United States Magistrate Judge

February 4, 2013
Greenville, South Carolina